UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60660-CIV-DIMITROULEAS

THOMAS E. BERG, JR.,

                                        Magistrate Judge Rosenbaum

    Plaintiff,
vs.

MERCHANTS ASSOCIATION
COLLECTION DIVISION, INC.,
d/b/a MAF COLLECTION SERVICES,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE

THIS CAUSE is before the Court upon the Defendant Merchant Association Collection Division, Inc.'s Motion to Dismiss the Complaint with Prejudice [DE 11] filed on June 24, 2008. The Court has carefully considered the Motion, the Plaintiff Thomas E. Berg, Jr.'s Opposition to Defendant's Motion to Dismiss [DE 18] filed on August 5, 2008, the Defendant's Reply Memorandum in Support of its Motion to Dismiss with Prejudice [DE 19] filed on August 15, 2008, and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff alleges that the Defendant Merchant Association Collection Division, Inc. d/b/a MAF Collection Services ("MAF") left pre-recorded messages on Plaintiff's voice mail at his residence in seeking to collect on an alleged debt. (Complaint, ¶¶ 7-8.)  At least 11 times within a

1

year, the Defendant allegedly left the following message:

> Hello. This message is for Thomas Berg. If you are not the person requested, disconnect this recording now. By continuing to listen to this recording you acknowledge you are the person requested. This is MAF Collection Services. We are expecting your call at 1-800-749-7710. This is an attempt to collect a debt. Any information obtained will be used for that purpose. 1-800-749-7710.

(Complaint, ¶ 8).

Plaintiff alleges that his father (Thomas E. Berg, Sr.), step-mother, stepmother's ex-spouse, girlfriend, and neighbor all heard the message in the Plaintiff's home on one or more occasions. (Complaint, ¶ 11). Also, Plaintiff alleges that the Defendant knew or had reason to know that other persons besides the Plaintiff might hear the messages, and that Defendants never had authority to communicate with third parties regarding the debt. Plaintiff claims that these messages are in violation of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692c(b), and the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. § 559.55. Plaintiff seeks damages and attorney's fees for violation of the FDCPA (Count I), damages and attorney's fees for violation of the FCCPA (Count II), and a permanent injunction to prevent the Defendant from further communications that violate the FDCPA and FCCPA (Count III).

II. DISCUSSION

In its Motion to Dismiss, the Defendant argues that the messages described in the Complaint do not fall within the statutory restrictions on debt collectors' communications with third parties when left at the debtor's home voice mail. Defendant also argues that to interpret the statutory provisions as prohibiting such communications would render the statute

2

unconstitutional under the First Amendment.  Finally, Defendant contends that the Count III must be dismissed because the FDCPA does not make equitable relief available to private litigants.

Plaintiff counters that a plaintiff need only claim that third parties heard the messages in order to state a claim.  Plaintiff also claims that the risk that third parties may hear voice mail messages at a debtor's home required the Defendant to use another method to communicate with the Plaintiff about the debt.  Plaintiff asserts that the Defendant's arguments are actually a fact-based "bona fide error defense" inappropriate for this stage of litigation.

### A. Motion to Dismiss Standard

When a defendant files a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must determine if the Plaintiff in the complaint has alleged "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 (1957)). Plaintiffs must "raise a right to relief above the speculative level" and "nudge[] their claims across the line from conceivable to plausible." Twombly, 127 S. Ct. at 1965, 1974.  The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover.  See Linder v. Portocarrero, 963 F.2d 332, 336 (11th Cir. 1992) (citing Robertson v. Johnston, 376 F.2d 43 (5th Cir. 1967)).

### B.  Plaintiff Has Stated a Claim under the FCCPA

Defendant stated that it limited its analysis to the FDCPA because Fla. Stat. § 559.77(5) states that "[i]n construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair

Debt Collection Practices Act." However, that provision related only to the section on civil remedies, § 559.77. Section 559.552 gives the relationship between the FCCPA and FDCPA, where it states that the FCCPA gives additional consumer protections without limiting the FDCPA. Fla. Stat. § 559.552. Thus, we interpret the FCCPA third-party communications provision separately from the FDCPA provision.

In order to bring a claim under Fla. Stat. § 559.77(5), a Plaintiff must assert "(1) that there was a disclosure of information to a person other than a member of the debtor's family, (2) that such person does not have a legitimate business need for the information, and (3) that such information has affected the debtor's reputation." Heard v. Mathis, 344 So. 2d 651, 655 (Fla. 1st DCA 1977).

The Plaintiff here has alleged specifically that there was a disclosure of information to his neighbor and girlfriend among others, that those third persons did not have a legitimate business need for the information, and that the information affected the Plaintiff's reputation. (Complaint, ¶¶ 8, 11, 12, 14, 15, 21). Therefore, Plaintiff has sufficiently alleged a claim under the FCCPA in Count II of his Complaint.

### C. Plaintiff Has Stated a Claim under the FDCPA

Defendant does not dispute that the messages are communications under the FDCPA, but asserts that the plain language of § 1692c(b) does not prohibit debt collectors from leaving voice mail messages in a debtor's home. The Defendant maintains as well that it was not the intent of Congress for the FDCPA to prohibit the voice mail messages of the type at issue here. The Defendant also contends that the previous rulings of other courts have suggested that these voice mail messages would not run afoul of the FDCPA.

*1. Plain Language of the FDCPA*

A court's starting point in statutory interpretation is the statute's language. Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 739 (1989); Ford v. Moore, 296 F.3d 1035, 1038 (11th Cir. 2002). Where the text is unambiguous, the interpretation ends. Am. Bankers Ins. Group v. United States, 408 F. 3d 1328, 1332 (11th Cir. 2005). Unless defined otherwise, "words are given their ordinary, plain meaning." Id. Only in the rare case where the plain meaning of the text gives an absurd result is there a narrow exception to following the plain, unambiguous meaning of a statute. United States v. Nix, 438 F.2d 1284, 1286 (11th Cir. 2006).

Section 1692c(b) requires that debt collectors communicating with third parties may not reveal that the consumer owes a debt:

> Communications with third parties. Except as provided in section 804 [15 U.S.C. 1692b], without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). The definition of communications in the FDCPA is "the conveying of information regarding a debt directly or indirectly to any person through any medium." § 1692a(2). Courts generally consider pre-recorded messages and voice mail messages from debt collectors to be "communications," even if the messages do not state what the calls are regarding. See e.g., Belin v. Litton Loan Servicing, LP, 2006 U.S. Dist. LEXIS 47953 *12 (M.D. Fla. July 14, 2006) (holding that messages left on the debtor's answering machine were "communications" under the FDCPA); Foti v. NCO Fin. Sys., 424 F. Supp. 2d 643, 655-56 (S.D.N.Y. 2006)

(holding that a voice mail message is a "communication" under the FDCPA); Hosseinzadeh v. M.R.S. Assocs., Inc., 387 F. Supp.2d 1104, 1115-16 (C.D. Cal. 2005) (same); but see Biggs v. Credit Collections, Inc., 2007 U.S. Dist. LEXIS 84793 *12-13 (W.D. Okla. Nov. 15, 2007) (ruling that a voice mail message by a debt collector was not a communication because it contained no information regarding a debt). Contact of the consumer's family members by debt collectors falls within the scope of § 1692c(b), with the exception of the consumer's wife, or parent if the consumer is a minor. § 1692c(d); West v. Costen, 558 F. Supp. 564, 576 (W.D. Va. 1983) (granting summary judgment when the debt collector spoke to consumer's grandparents, parents, daughter, and uncle regarding the consumer's debt). Although debt collectors are to refrain from mentioning the debt when communicating with third parties, they must indicate to the consumer their identity, that the debt collector is attempting to collect a debt, and that any information obtained would be used for that purpose. §§ 1692d(6), 1692e(11). This warning is sometimes referred to as the "mini-Miranda." E.g., Barrows v. Chase Manhattan Mortgage Corp., 465 F. Supp. 2d 347, 359-60 (D.N.J. 2006).

Defendants argue that the statute, by its plain language, does not include voice mail messages left at the debtor's home as "communicat[ing] in connection with any debt with any person other than the consumer." § 1692c(b). The Defendant emphasizes the forewarning it included in the message, directing anyone other than the Plaintiff to disconnect. However, it is not clear that this forewarning necessarily removes the messages from the statutory restrictions on communicating with third parties. The FDCPA definition of "communication" includes "conveying information regarding a debt directly or *indirectly* to any person through any medium." § 1692a(2). Furthermore, the statute states that "prior consent of the consumer" must

be "given directly to the debt collector" before the debt collector may communicate with third parties. § 1692c(b). With this fairly broad definition of communication and the need for direct prior consent for communications with third parties, the Court cannot hold that the plain language of the statute excludes the Defendant's communications.

*2. Legislative History and FTC Interpretations*

Defendants also maintain that the legislative history of the FDCPA and the FTC interpretation show that the restrictions of § 1692c(b) do not apply to voice mail messages left at the debtor's residence.

The purpose of the FDCPA is to "eliminate abusive practices, not disadvantage ethical debt collectors, and promote consistent state action." S. Rep. No. 95-382 at 7 (1977) as reprinted in 1977 U.S.C.C.A.N. 1695, 1701. Among the needs the Senate listed for the legislation is collection abuse in the form of "disclosing a consumer's personal affairs to friends, neighbors, or an employer." Id. The Senate noted that the "legislation strongly protects the consumer's right to privacy by prohibiting a debt collector from communicating the consumer's personal affairs to third persons," while recognizing the "legitimate need to seek the whereabouts of missing debtors." Id. at 4. About § 1692c in particular, the Senate wrote that "[t]here is general prohibition on contacting any third parties (other than to obtain location information)," with some exceptions not relevant here. Id. at 7.

Congress did not appear to address directly the situation here. The statute itself uses language that is significantly broader, by defining communications to include indirect conveying of information. § 1692c. The legislative history offers little guidance on a situation as this one where the third party receives the information, in the home of the consumer, after receiving a

warning that the information is intended only for the consumer.

Congress charged the Federal Trade Commission (FTC) with the authority to enforce the FDCPA, but did not give the FTC the authority to promulgate rules and regulations. § 1692*l*. Therefore, FTC interpretations on the FDCPA "should be accorded considerable weight," but are not binding on courts. Hawthorne v. Mac Adjustment, 140 F.3d 1367, 1372 n.2 (11th Cir. 1998). The Defendant notes an FTC Staff Opinion Letter stating that the purpose of §1692c(b) was to "prevent unscrupulous debt collectors from embarrassing consumers and invading their privacy be revealing the existence of their debt to friends, neighbors or other third parties." FTC Staff Opinion Letter Borowski Nov. 6, 1992, available at http://www.ftc.gov/os/statutes/fdcpa/letters/borowski.htm. This letter suggests that § 1692c(b) was intended to prevent debt collectors from purposely shaming debtors in front of others, rather than generally protecting a consumer's right to privacy. However, the FTC gave this opinion in the context of a debt collector communicating with one holder of a joint account concerning bad checks from the joint account written by the other joint account holder.[1] Id. We find more relevant the FTC Staff Commentary, where the FTC stated that "[a] debt collector does not violate this provision when an eavesdropper overhears a conversation with the consumer, unless the debt collector has reason to anticipate the conversation will be overheard." Federal Trade Commission Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50104 (Dec. 13, 1988). The example given here by the FTC suggests that the FDCPA is violated by

---

[1] The FTC wrote a similar statement in the context of answering a question of whether a debt collector may give information to a debtor's survivors when the survivors already know of the debt and are contacting the debt collectors for the amount in order to resolve it. FTC Staff Opinion Letter Fisher Aug. 6, 1992, available at http://www.ftc.gov/os/statutes/fdcpa/letters/fisher.htm.

debt collectors who leave messages for consumers while aware that the message may be heard by others.

Only one case to this Court's knowledge has specifically ruled on whether leaving messages on the debtor's home answering machines, heard by third parties, was a violation of § 1692c(b). F.T.C. v. Check Enforcement, 2005 WL 1677480 *8 (D.N.J. 2005). The court in Check Enforcement found it to be a violation without discussion. Id. Courts have found violations of the FDCPA when debt collectors have left messages for debtors without leaving the "mini-Miranda". E.g., Hossenzadeh v. M.R.S. Associates, Inc., 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005); see also Belin v. Litton Loan Servicing, LP 2006 WL 1992410 *4-5 (M.D. Fla. 2006) (finding that the plaintiff had stated a claim under the FDCPA when the debt collector left a message on a third person's answering machine asking the debtor to call back, but not revealing that the call was in regards to a debt).

Other courts, while not facing the same issue before us, have given conflicting opinions on the closely related issue of automated messages. For example, the court in Joseph v. J.J. Mac Intyre Cos. addressed automated calls to the debtor's home, where there would be a risk of someone other than the debtor answering and hearing the message (a risk similar to the situation here). 281 F. Supp. 2d 1156, 1164 (N.D. Cal. 2003). Joseph stated that while the "disclosure during an automated call could compromise the debtor's privacy if another party such [*sic*] a neighbor or relative inside the home picks up the debtor's phone and hears the automated call, the possible compromise of privacy is less likely and more remote than where *e.g.*, the [debt collector] indicates the nature of the collection notice on the outside of an envelope sent by mail for the world to see." Id. (internal citations omitted) (comparing § 1692c(b) to § 1692f(7)-(8),

which restrict what information debt collectors may put on the outside of mailing envelopes). Joseph went on to state that Congress's concern was "deliberate disclosure of the debtor's status to third parties." Id.  The court in Foti v. NCO Fin. Sys. Inc., without reaching the question, acknowledged that Joseph established some authority that it may be possible for automated messages at a debtor's home to comply with both §§ 1692d(6) and 1692e(11) requirements of disclosure and § 1692c(b) restrictions on communications with third parties. 424 F. Supp. 2d 643, 660 n.26 (S.D.N.Y. 2006).  But Foti found that debt collectors who use automated messages do so at the peril of violating the FDCPA, either by not leaving enough information for the debtor in violation of §§ 1692d(6) and 1692e(11), or by leaving too much information for a possible third party in violation of § 1692c(b).  See id. at 658-59.  Debt collectors have no entitlement to use automated messages to reach debtors, and courts have no obligation to harmonize different provisions of the FDCPA so that debt collectors may use an inherently risky method of communication. See id. at 659-60 (citing Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2nd Cir. 1996)).

Voice mail messages left at the debtor's home pose similar risks as automated messages.[2] In this case, the Defendant left messages at the Plaintiff's home with a warning to the listener to disconnect if the listener was not the Plaintiff, and that continuing to listen to the message indicates that the listener was Plaintiff Thomas Berg.  This warning would perhaps persuade other persons from continuing to listen to the message.  However, nothing in the message would alert the Plaintiff to disconnect if he were to listen to the message in the presence of others.  Even

---

[2]  The messages at issue here automated.  The risk of another person listening to or overhearing the message would, of course, be identical whether the message left was automated or left by a live caller.

if by leaving the warning, the Defendant had taken reasonable precautions to prevent third persons from continuing to play the messages themselves, the Plaintiff could claim that the Defendant could still reasonably anticipate that third persons would overhear the message while the Plaintiff played it.  Also, the FDCPA specifically requires that prior consent for third party communication be given directly to the debt collector by the consumer. § 1692c(b).  A third party, or the debtor in the presence of a third party, continuing to listen to the message in spite of the warning does not qualify as prior consent directly to the debt collector.  Therefore, the Court cannot say that the Plaintiff has failed to state a claim upon which relief can be granted when the Defendant left messages on the Plaintiff's voice mail that third persons heard.

      The Court is aware that this ruling will make it difficult, though perhaps not impossible, for debt collectors to comply with all of §§ 1692c(b), 1692d(6), and 1692e(11) at once in a message left on the consumer's voice mail.  However, we follow reasoning similar to <u>Foti</u> to find no reason that a debt collector has an entitlement to use this particular method of communication.  Debt collectors have other methods to reach debtors including postal mail, in-person contact, and speaking directly by telephone.

### D.  Interpretation of This Claim as a Violation of § 1692c(b) Does Not Render the FDCPA Unconstitutional

      Defendant argues that the FDCPA must be found unconstitutional if it is to be interpreted to prohibit the communications described in the Plaintiff's complaint, because such a ruling would effectively make it impossible for debt collectors to leave messages on debtors' answering machine while conforming to the FDCPA.  According to the Defendant, the restrictions on debt collector's speech to debtors on their answering machines violate the First Amendment

regardless of whether the restrictions are considered content-based, content-neutral, or commercial speech.  The Court declines to rule that its decision today is a complete prohibition of messages regarding debt collection left on debtors' voice mail, but will nonetheless address the Defendant's First Amendment concerns.

Laws are content-based if they "by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed." KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1269 (11th Cir. 2006) (quoting Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 643 (1994)).  A content-based restriction is "subject to strict scrutiny, meaning that it is constitutional only if it constitutes the least restrictive means of advancing a compelling government interest." Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1258 (11th. Cir. 2005).  Content-neutral restrictions are subject to intermediate scrutiny, so they must be "narrowly tailored to serve a significant governmental interest," and they must "leave open ample alternative channels of communications." DA Mortg., Inc. v. City of Miami Beach, 486 F.3d 1254, 1256 (11th Cir. 2007) (citing Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)).

The Court disagrees with the proposition that the communications restrictions of the FDCPA amount to restrictions based on the ideas or views expressed, and therefore deserve the highest scrutiny under the First Amendment.  Such a finding would lead to strict scrutiny analysis of any legislation requiring discretion in information disclosure by debt collectors, financial institutions, medical personnel, or others dealing with sensitive personal information.  As the Supreme Court stated, "speech on matters of purely private concern is of less First Amendment concern." Dun & Bradstreet v. Greenmoss Builders, 472 U.S. 749, 759 (comparing issues of public concern, which receive special First Amendment protection, with the issuance of credit

reports, which did not).  Like the credit reports of Dun & Broadstreet, the information here is solely of interest to the speaker and its specific audience and is not a matter of public concern. See also Trans Union Corp. v. FTC, 245 F.3d 809, 818 (D.C. Cir. 2001) (finding that lists of names and addresses of compiled and sold by a consumer reporting agency were akin to the credit reports of Dun & Broadstreet and did not merit strict scrutiny protection).  The FDCPA restrictions at issue here, then, do not fall under strict scrutiny analysis.

Under intermediate scrutiny, the restrictions would be constitutional if they are "narrowly tailored to serve a significant governmental interest."  DA Mortg., Inc. v. City of Miami Beach, 486 F.3d 1254, 1256 (11th Cir. 2007).  Abusive debt collection practices and invasion of privacy are concerns Congress intended to address by enactment of FDCPA. § 1692(a); S. Rep 95-382 at 7 (1977) as reprinted in 1977 U.S.C.C.A.N. 1695, 1701.  Both are significant governmental interests.  The Defendant argues it is "nonsensical" to rule that the total prohibition on debt collectors from leaving messages on debtors' voice mail is narrowly tailored to address harassing or abusive collection practices.  The invasion of privacy, however, was also a stated goal of Congress.  § 1692(a); S. Rep 95-382 at 7.  Section 1692c(b) is intended to prevent debt collectors from revealing information about a consumer's debt to third persons.  Leaving a message at the debtor's home, where another third person may retrieve or overhear it, is a substantial risk of communication to third parties that § 1692c(b) the FDCPA was intended to prevent.  Prohibiting voice mail messages is narrowly tailored to prevent that risk, though it may not be, nor does it need to be, the "least restrictive" means as would be required under strict scrutiny analysis.  Debt collectors have several alternative channels of communication available to them, including live conversation via telephone, in person communication, and postal mail.

In the messages particular to this case, ruling that Plaintiffs have stated a claim under the FDCPA does not offend the First Amendment. As discussed above, the inclusion of the warning by the Defendant would not alert the Plaintiff that he should disconnect the message before private and potentially embarrassing information would be revealed to others in hearing range. Thus, a prohibition of these particular messages is narrowly tailored to serve the significant governmental interest of protecting consumers' privacy.  Again, Defendant has alternative channels of communication available.

### E.  Whether Any Violation by the Defendant Was Intentional is an Issue of Fact

Defendant argues that under § 1692k(c), which establishes the "bona fide error" defense, the messages should be held not to be violations as a matter of law.  Section 1692k(c) states that a "debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  The "preponderance of evidence" language in § 1692k(c) contemplates a factual inquiry.  The content of the messages at issue may suggest that a violation was unintentional.  However, Plaintiff has alleged that the Defendant either knew or had reason to know that third parties might hear the message.  Thus, there is a factual dispute as to the Defendant's intent, and the Court will not rule on this factual issue based only on the pleadings.

### F. Plaintiff May Seek Injunctive Relief under the FCCPA

Defendant argues that Count III of the Plaintiff's Complaint seeking injunctive relief should be dismissed because the FDCPA does not provide such relief to private litigants. Plaintiff did not respond to this portion of Defendant's argument in his Response.

14

Count III of the Plaintiff's Complaint seeks injunctive relief under both the FCCPA and the FDCPA. Defendant is correct that the FDCPA does not authorize injunctive relief to private litigants. Sibley v. Fulton Dekalb Collection Service, 677 F.2d 830, 834 (11th Cir. 1982). However, the FCCPA states that a "court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." Fla. Stat. § 559.77(2). Florida has granted specific statutory authority for a plaintiff to seek injunctive relief under the FCCPA. Thus, the Plaintiff has stated a claim upon which relief may be granted in Count III.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Defendant's Motion to Dismiss the Complaint with Prejudice [DE 11] is hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 31st day of October, 2008.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Donald A. Yarbrough, Esq.
Joan Carlos Wizel, Esq.
Onier Llopiz, Esq.